MITCHELL & KECK, Appellants, v. J. S. CHICK & SON, Respondents.

Kansas City Court of Appeals, April 19, 1909.

VENDOR AND VENDEE: Approval of Contract: Agency: Earnest Money: Frauds and Perjuries. Plaintiff bought of the defendants' principal through the defendants certain real estate and the contract of sale provided for the principals' approval within ten days, and if such approval was not secured the earnest money, consisting of an account and a small amount of money were to be returned to plaintiffs. The principal refused to approve the contract and the defendants tendered back the account and money which plaintiffs refused and sued for the earnest money. *Held*, when the principal objected to the sale defendants' obligation was to return to plaintiffs the property they had received on account of the purchase price, and having tendered this before the commencement of the action, plaintiff had no right to recover; and on the evidence one of the persons claimed to be the agent of the defendants is found to have acted for himself and another who effected the sale is held to have been defendants' agent. The Statute of Frauds has no application since the contract was a mere conditional sale.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*W. W. Calvin* for appellants.

(1) The court erred in refusing to submit the case to the jury and in giving, at the close of plaintiff's evidence, the instructions in the nature of a demurrer to the evidence.   (2)   Whether or not Calhoon acted as the agent of defendants, in this transaction, was a question for the jury.   Middleton v. Railway, 62 Mo. 579; Hull v. Jones, 69 Mo. 587; Hoppe v. Saylor, 53 Mo. App. 4; Werth v. Ollis, 61 Mo. App. 401; Mithcum v. Dunlap, 98 Mo. 418; Mosely v. Com. Co., 91 Mo. App. 505; Reynolds v. Railway, 114 Mo. App. 674; Advertising Co. v. Wanamaker, 115 Mo. App. 293.   (3)   And it does not require direct evidence to establish an agency. It may be inferred from circumstances.   Cases supra; Nicholson v. Golden, 27 Mo. App. 132; Johnson v. Hurley, 115 Mo. 513; McLachen v. Barker, 64 Mo. App. 524; Mechem on Agency, 707; Advertising Co. v. Wanamaker, 150 Mo. App. 294, and cases cited; Mitchum v. Dunlap, 98 Mo. 418; Judd v. Walker, 114 Mo. App. 128; Heath v. Scroex, 119 Mo. App. 93, 96 S. W. 313; Swofford v. Pratt, 93 Mo. App. 631; Moore v. Renick, 95 Mo. App. 209; Whimp v. Early, 104 Mo. App. 89; Browne on Statute of Frauds, secs. 318a, 319; Taylor v. LeBeaume, 14 Mo. 572.

*Sebree, Conrad & Wendorff* for respondents.

(1) The sale, if any, of the Staley account mentioned in evidence was within the Statute of Frauds. Darnell v. Laferty, 113 Mo. App. 282; Hale v. Burton, 118 Mo. App. 577; Walker v. Supple, 54 Ga. 178; Baldwin v. Williams, 44 Mass. 365; Hudson v. Weir, 29 Ala. 294; Greenwood v. Law, 55 N. J. L. 168; 29 Am. and Eng. Ency. of Law, p. 960; Fine v. Hornby, 2 Mo. App. 61; Bernhardt v. Wall, 29 Mo. App. 206.   (2)   Upon failure of ratification by seller in real estate contract referred to in evidence, plaintiffs were tendered the actual deposit by them made.   (3)  The question of agency. Hoster v. Lange, 80 Mo. App. 234; Atlee v. Fink, 75 Mo. 100; Taylor v. Sartorius, 130 Mo. App. 23.

JOHNSON, J.—This suit was brought before a justice of the peace of Jackson county. The statement filed is in two counts. In the first, it is alleged that plaintiffs sold, assigned and delivered to defendants an account of $242.85 they held against one J. G. Staley and, at the same time, executed and delivered to defendants their bank check for $7.15; that in consideration of the sale of said account and the delivery of said check, defendants promised and agreed to pay plaintiffs $250 in money and that defendants have failed and refused to pay said sum or any part thereof. In the second count, plaintiffs allege that defendants received from them $250, and agreed to hold it as agents and stakeholders of plaintiffs on the following conditions: "That should one T. H. Pratt, Ex., not ratify a certain agreement of sale, entered into with plaintiffs, and in which agreement defendants were made and were the agents and stakeholders of plaintiffs, within ten days from the date thereof, August 6, 1906, then it was agreed and understood by and between the parties to said contract of sale, and was also agreed and understood by and between plaintiffs and defendants, that the money so left and deposited in hands of defendants was to be turned over and refunded to plaintiffs." Further, it is alleged that said Pratt failed and refused to ratify said contract of sale and that defendants have failed and refused to return the deposit to plaintiffs.

At the trial in the circuit court where the cause was taken by appeal, the court peremptorily instructed the jury, at the conclusion of the evidence introduced by plaintiffs, to return a verdict for defendants. Plaintiffs took a nonsuit with leave and after their motion to set aside was overruled, appealed to this court.

Material facts disclosed by the evidence are as follows: In the summer of 1906, plaintiffs, who were partners engaged in the plumbing business in Kansas City, did the plumbing work for a building owned by Staley

at No. 616 Olive street. The charge for all the work was $367.85; $125 was paid on the account by Staley, leaving due and unpaid the remainder of $242.85. The account was approved and marked "O. K." by Staley, the debtor, and plaintiffs were directed by him to present it at defendants' office in Kansas City for payment. Defendants were partners engaged in the business of real estate and loan agents. They employed one Colvin as an assistant in their loan business and one Calhoun as a salesman of real estate. Staley had applied to them for a loan on the property we have mentioned, but defendants could not make the loan and referred him to Colvin who, it appears, was permitted by arrangement with defendants to transact loan business on his own account as well as for defendants. Colvin secured a loan on the property from a Life Insurance Company and we think the evidence shows conclusively that defendants had no connection with the transaction, though it was conducted by Colvin in their office. It appears that the proceeds of the loan were not sufficient to pay the entire cost of the improvements made by Staley on the property and Colvin began, and conducted to an unsuccessful end, negotiations with the insurance company for another loan. During the progress of these negotiations, plaintiffs, at the direction of Staley, presented their account to Colvin for payment. From what they were told, plaintiffs inferred that defendants were the agents in charge of the loan but, as we have said, defendants had nothing to do with it and plaintiffs were referred to Colvin who, apparently, was satisfied with the correctness of the account and assured plaintiffs that it would be paid in a few days. Plaintiffs called on Colvin several times about the payment of the account and becoming impatient, threatened to employ a lawyer. Finally, plaintiff Mitchell went to defendants' office on the 5th or 6th of August, 1906, to collect the account, if possible. While there, he was approached by Calhoun, who wished to interest him in the purchase

of some real property owned by T. H. Pratt, as executor
of an estate. Plaintiff said he would not purchase the
property unless he could apply his account against Sta-
ley on the purchase price. Calhoun agreed that this
might be done and the parties reached an understand-
ing. A written contract of sale was prepared by the
terms of which Mitchell bought the property for $3,630.
It recites: "Of the purchase price, two hundred and fifty
dollars has been paid and is deposited with J. S. Chick
& Son, agents for the seller, and the balance is payable
as follows," etc. It contains the stipulation: "All
money is to be returned to Mr. Mitchell if the sale is
not ratified by Mr. Pratt within ten days from this
date." The contract was signed by Calhoun as agent
for Pratt, Executor, and by Mitchell as agent for his
firm. The sale was not consummated for the reason
that Pratt refused to ratify it. It is conceded that the
sum of $250 mentioned in the contract as paid by plain-
tiffs was made up of the following items, viz.: First, a
transfer in writing of the Staley account amounting, as
we have said, to $242.85, and, second, a check of $7.15,
drawn by plaintiffs on a bank in Kansas City and made
payable to the order of defendants. The evidence tends
to show that defendants were the agents of Pratt, the
executor, and that Calhoun was acting as their salesman
in entering into the contract of sale with Mitchell.
Plaintiffs contend that these facts entitle them to re-
cover $250 in money from defendants while defendants,
among their defenses, say that at best plaintiffs, on the
refusal of Pratt to ratify the contract of sale were en-
titled only to a return of their account against Staley
and their check of $7.15. It is conceded that a return
of the account and check was tendered plaintiffs before
this suit was begun. Other facts appear in the record,
but those stated suffice for a proper understanding of
the case. Counsel in their briefs discuss with much
earnestness the questions of whether the cause of action
pleaded in the first count of the statement falls within

the operation of the statute of frauds and of whether Colvin and Calhoun were acting in the transactions of the loan to Staley and the sale of the real estate as the respective agents of defendants. We think the evidence shows that Colvin was not the agent of defendant in the matter of the loan and that Calhoun was their agent in selling real estate.

We do not find it necessary to discuss the subject of the effect of the statute of frauds on the cause stated in the first count for the reason that the evidence does not support the inference that defendants acting through their agent Calhoun did anything more than to make a conditional purchase of the Staley account. Clearly it was the intention of the parties that defendants should accept the assignment of the account as so much cash paid on the purchase price of the real estate provided their principal, the executor, would ratify the contract of sale. They did not intend to make an absolute purchase of the account and took an assignment of it only as a part of the transaction of selling the real estate and as an inducement to plaintiffs to become purchasers thereof. When their principal rejected the contract of sale, the extent of their obligation was to return to plaintiffs the property they had received on account of the purchase price, viz., the Staley account and the check of $7.15. Since defendants tendered this property to plaintiffs before the commencement of this action and have kept the tender good, it follows that plaintiffs can have no right to recover under either count of the statement.

The judgment is affirmed. All concur.